# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **SZ DJI TECHNOLOGY CO., LTD.** | **CASE NO. _____** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT FOR PATENT INFRINGEMENT** |
| **IRDETO B.V. AND IRDETO SECURITY B.V.** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SZ DJI Technology Co., Ltd. ("DJI") hereby files this Complaint for Patent Infringement against Defendants Irdeto B.V. and Irdeto Security B.V. (collectively, "Irdeto"), and hereby alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

1.      This is a civil action for infringement of U.S. Patent Nos. 10,116,785 (the "'785 Patent") (attached as Exhibit 1), 11,119,474 (the "'9,474 Patent") (attached as Exhibit 2), 11,184,474 (the "'4,474 Patent") (attached as Exhibit 3), and 11,482,121 (the "'121 Patent") (attached as Exhibit 4), (collectively, the "Asserted Patents"), arising under the Patent Laws of the United States, 35 U.S.C. §§ 271, et seq.

2.      Irdeto infringes directly, literally and/or by the doctrine of equivalents by developing, making, using, selling, offering for sale, and/or importing into the United States products that incorporate the Asserted Patents (the "Accused Instrumentalities"), and/or by actively inducing others to engage in acts of infringement in the United States.

3.     DJI seeks damages and other relief for Irdeto's infringement of the Asserted Patents.

## PARTIES

4.     Plaintiff SZ DJI Technology Co., Ltd. is headquartered in Shenzhen, China at DJI Sky City, No. 55, Xianyuan Road, Nanshan District.

5.     On information and belief, Defendant Irdeto B.V. is a Dutch limited liability company, having its principal place of business at Taurusavenue 105 2132 LS Hoofddorp, The Netherlands. Irdeto B.V. does business in the State of Texas and in the Eastern District of Texas.

6.     On information and belief, Defendant Irdeto Security B.V. is a Dutch limited liability company, having its principal place of business at Taurusavenue 105 2132 LS Hoofddorp, The Netherlands. Irdeto Security B.V. does business in the State of Texas and in the Eastern District of Texas.

## JURISDICTION AND VENUE

7.     This Court has original subject matter jurisdiction over the patent infringement claims in this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has personal jurisdiction over Irdeto consistent with the requirements of the Due Process Clause of the U.S. Constitution and the Long-Arm Statute of the State of Texas. On information and belief, Irdeto has availed itself of the privilege of conducting and soliciting business within Texas, including engaging in infringing activities in Texas and within this District, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the U.S. Constitution and such that the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

9.     On information and belief, Irdeto, directly or through its partners, intermediaries, and/or distribution network such as its fleet management partners, purposefully and voluntarily

placed one or more of its products, systems and/or services that practice the Asserted Patents in the stream of commerce, with the intention and expectation that they will be purchased and used by consumers such as commercial-fleet operators, rental agencies, shared-mobility providers, and off-road equipment owners in Texas and this District. On information and belief, these products, systems and/or services have been and continue to be purchased and used in Texas and this District.

10.    By way of example, on information and belief, Irdeto specifically, purposefully, and voluntarily intends its systems to enter Texas' stream of commerce by exhibiting Irdeto Keystone at events such as the upcoming Accelerate – Women in Trucking Conference and Expo in Dallas, Texas on November 9-12, 2025.[1]

11.    On information and belief, Irdeto specifically, purposefully, and voluntarily places its systems in Texas' stream of commerce by sponsoring the Texas Trucking Association Annual Conference in Austin, Texas in an effort to both market Keystone and promote additional sales in Texas.[2]

12.    On information and belief, Irdeto has derived substantial revenue from infringing acts in this District, including from the sale and use of the Accused Instrumentalities.

13.    In the alternative, this Court has personal jurisdiction over Irdeto pursuant to Federal Rule of Civil Procedure 4(k)(2). This is because: (a) the claims for patent infringement in this action are claims arising under federal law; (b) Irdeto is not subject to the jurisdiction of any state's courts of general jurisdiction; and (c) exercising jurisdiction over Irdeto is consistent with

---

[1] *See* Women in Trucking Ass'n, *Sponsorship & Exhibit Opportunities*, https://www.womenintrucking.org/sponsorship-opportunities (last visited Oct. 22, 2025).

[2] *See* Texas Trucking Ass'n, *Annual Conference Sponsors*, https://www.texastrucking.com/annual-conference-sponsors/ (last visited Oct. 22, 2025).

the U.S. Constitution.

14.    On information and belief, Irdeto has purposefully directed sales of the Accused Instrumentalities and related Keystone fleet-security products at the United States as a whole through its marketing, trade shows, technical infrastructure, and distribution practices.[3] Irdeto's website and marketing materials expressly identify the United States and North America as key markets for Keystone, highlighting U.S. customers, vehicles, and use cases. Irdeto operates and/or maintains a global website accessible from the United States, including from this District, which allows consumers to "Contact a specialist" to inquire about purchasing Keystone by Irdeto for business fleet management.

15.    On information and belief, Irdeto distributes the Keystone mobile applications through the U.S. versions of the Apple App Store and Google Play Store, priced in U.S. dollars and available for download by U.S. users, with app listings displaying U.S. reviews and support information, and with the intent, knowledge, and expectation that the applications will be downloaded and used by customers throughout the United States, including in this District.

16.    The Apple App Store page for the "Keystone by Irdeto" mobile application, when visited from the United States, lists the seller as Irdeto Security B.V. Moreover, the Apple App Store page for the "Keystone by Irdeto" mobile application, when visited from the United States, lists the developer as Irdeto Security B.V.

17.    The Google Play Store page for the "Keystone by Irdeto" mobile application, when visited from the United States, lists the developer as Irdeto Security B.V. The App identifies contact information for Irdeto Security B.V., including its address in the Netherlands.

18.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c)(3). Irdeto is

---

[3] *See* Irdeto, *Events*, https://irdeto.com/events (last visited Oct. 22, 2025).

organized under the laws of a foreign jurisdiction and is not a resident of the United States. Thus, Irdeto may be sued in any judicial district.

## BACKGROUND

### A.    DJI and Its Persisting Innovation

19.    DJI is a worldwide leader in the innovations and development of unmanned aerial vehicles (UAVs) that has made DJI a commanding market leader of UAVs in the United States. Since its founding in 2006, DJI has filed over one thousand applications leading to hundreds of issued patents in the United States alone.

20.    These patents cover core technologies such as geofencing, redundancy management, data-distribution systems, and application development for controlling movable objects. DJI's inventions have driven rapid advancements in autonomous and intelligent control systems, ensuring the safety, stability, and performance of vehicles used across transportation, logistics, and industrial settings.

21.    Through its ongoing commitment to research, development, and protection of its intellectual property, DJI continues to lead the world in innovation and remains at the forefront of developing technologies that enable smarter, safer, and more efficient transportation.

### B.    Defendants and the Accused Instrumentalities

22.    Defendants Irdeto B.V. and Irdeto Security B.V. are global cybersecurity and digital platform-management companies. Defendants provide software security, digital-rights management, and access-control technologies for connected devices across industries including the transportation industry.[4] Irdeto promotes itself as a leader in secure connectivity and trusted digital access, offering embedded security solutions that protect content, data, and connected assets

---

[4] *See* Irdeto, *About Us*, https://irdeto.com/about-us (last visited Oct. 22, 2025).

from unauthorized use. [5] Among its principal offerings is a suite of connected-vehicle cybersecurity products, such as those marketed to automotive manufacturers, fleet operators, and mobility-service providers.[6]

23.    One of Irdeto's flagship automotive solutions is Keystone, a digital-key and vehicle-access-management platform designed to replace physical keys with secure, policy-based digital credentials. Irdeto describes Keystone as enabling "secure, flexible, and scalable keyless access" for vehicles across all fleet types.[7] Keystone is marketed to commercial-fleet operators, rental agencies, shared-mobility providers, and off-road equipment owners. The Keystone system has three principal components: (1) a cloud-based backend server that manages user credentials, policy rules, and access logs; (2) an in-vehicle module or electronic control interface that receives authenticated commands and executes vehicle functions, such as locking and unlocking doors and starting engines; and (3) a mobile application that allows drivers to access authorized vehicles using a smartphone via Bluetooth Low Energy ("BLE"), near-field communication ("NFC") or another short-range wireless protocol, while a mobile software development kit ("SDK") handles the management, security, and communication.[8]

24.    Through this architecture, Keystone enables fleet managers and vehicle owners to issue, modify, and revoke digital keys in real time.[9] Authorized users receive credentials through

---

[5]  *See* Irdeto, *Irdeto Homepage*, https://irdeto.com/ (last visited Oct. 22, 2025).

[6]  *See* Irdeto, *Smart Mobility Solutions*, https://irdeto.com/smart-mobility (last visited Oct. 22, 2025) .

[7]  *See* Irdeto, *Keystone by Irdeto – Digital Keys for Fleets*, https://irdeto.com/smart-mobility/keystone-digital-key (last visited Oct. 22, 2025).

[8]  *Id.*

[9]  *See* Irdeto, *Keystone Digital Key Solution for Fleets* (infographic), https://irdeto.com/hubfs/resources/infographics/keystone-digital-key-solution-for-fleets.pdf (last visited Oct. 22, 2025).

the Keystone backend.[10] When the user approaches the vehicle, the Keystone mobile application automatically establishes an encrypted BLE connection with the in-vehicle module.[11] The system authenticates the credential, verifies compliance with predefined policy parameters—such as user identity, time of access, or geofence parameter—and, if valid, performs the corresponding vehicle function such as unlocking doors or enabling the ignition.[12] All access attempts and usage events are logged and synchronized with the backend for audit and monitoring purposes.[13]

25.    Irdeto markets seamless integration with existing connected vehicle solutions.[14] Irdeto further advertises Keystone as brand- and model-agnostic, meaning it can be retrofitted to a wide range of vehicle types without manufacturer-specific integration.[15] The system's policy-based framework allows for granular access control, including temporary or conditional credentials, remote disabling of access, and offline operation where cellular connectivity is unavailable.[16] Irdeto markets these features as providing enhanced fleet efficiency, reduced key-management costs, improved driver safety, and heightened asset security.[17] Industry reports and Irdeto's own marketing materials indicate that Keystone is deployed across large commercial fleets and mobility providers worldwide, issuing hundreds of thousands of encrypted digital keys

---

[10] *See* Geotab Inc., *Keystone* (STD), https://marketplace.geotab.com/solutions/keystone/ (last visited Oct. 22, 2025).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *See* Irdeto, supra note 3.

[15] *See* Geotab Inc., supra note 10.

[16] *See* Cybersecurity Excellence Awards, *"Keystone by Irdeto"*, https://cybersecurity-excellence-awards.com/candidates/keystone-by-irdeto/ (last visited Oct. 22, 2025).

[17] *See* Irdeto, *Irdeto Keystone Keeps Women in Trucking Safe on the Road*, https://irdeto.com/news/irdetos-groundbreaking-keyless-technology-keystone-keeps-women-in-trucking-safe-on-the-road (last visited Oct. 22, 2025).

monthly and managing tens of millions of miles of vehicle operation.[18]

26.     In sum, Irdeto's Keystone platform integrates cloud-based credential management, proximity wireless communication, and in-vehicle control module to provide secure, policy-driven vehicle access and operation. Upon information and belief, the Keystone system performs methods and employs apparatuses that practice one or more claims of the Asserted Patent(s), either literally or under the doctrine of equivalents.

### C.    The Accused Patents

### The '785 Patent

27.     U.S. Patent No. 10,116,785 (the "'785 Patent") entitled "System and method for supporting movable object application development," was issued on October 30, 2018, and names Weifeng Liu, Xiaojun Li, Caihua Zhao, Nanning Li, and Changjian Xu as the inventors. The '785 Patent is attached as Exhibit 1.

28.     DJI owns all rights, title, and interest in the '785 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

29.     The '785 Patent discloses novel techniques for "developing applications for using movable objects," particularly related to unmanned vehicles. '785 Patent at 1:15-28.

30.     The '785 Patent is valid and enforceable and directed to patentable subject matter.

31.     Claim 35 of the '785 Patent reads as follows:

> 35. A non-transitory computer-readable medium with instructions stored thereon, that when executed by a processor, perform the steps comprising:
>
> > establishing, via a movable object manager, a connection with a movable object configured to process commands for controlling at least one hardware module on the movable object;

---

[18]  *See* Irdeto, supra note 3.

receiving, via said movable object manager, one or more data packets from the movable object, wherein the data packets include information corresponding to the at least one hardware module on the movable object;

providing, via said movable object manager, the information in said one or more data packets to an application on a user terminal; and

providing, via said movable object manager, one or more commands from the application to the movable object, wherein the commands include information corresponding to the at least one hardware module on the movable object.

32.     A person of ordinary skill in the art reading the '785 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of developing applications for using movable objects, and that the invention provides for advancements in the field that, as of the filing date, were not routine, well-understood or conventional. Accordingly, each claim of the '785 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art software application development are concrete and improve the capabilities of existing methods.

33.     A person of ordinary skill in the art reviewing the specification of the '785 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

### The '9,474 Patent

34.     U.S. Patent No. 11,119,474 (the "'9,474 Patent") entitled "Method, device, and system for redundancy control," was issued on September 14, 2021, and names Gang He, Chang Geng, and Chaobin Chen as the inventors. The '9,474 Patent is attached as Exhibit 2.

35.     DJI owns all rights, title, and interest in the '9,474 Patent, and holds all substantial

rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

36.    The '9,474 Patent discloses novel techniques for redundancy control, employing redundant control paths and addressing the problem of providing redundancy/backup control of a remotely-controlled movable object '9,474 Patent at 1:14-2:2.

37.    The '9,474 Patent is valid and enforceable and directed to patentable subject matter.

38.    Claim 19 of the '9,474 Patent reads as follows:

> 19. A device, comprising:
>
> > a memory configured to store instructions; and
> >
> > a processor configured to execute the instructions to:
> >
> > > receive, through a first receiver of the device, a first control signal from a first remote control device that is remotely and communicatively coupled to the device;
> > >
> > > receive, through a second receiver of the device, a second control signal from a second remote control device that is remotely and communicatively coupled to the device; and
> > >
> > > select one of the first control signal of the first remote control device and the second control signal of the second remote control device for controlling a movable object.

39.    A person of ordinary skill in the art reading the '9,474 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of redundancy control, and that the invention provides for advancements in the field that, as of the filing date, were not routine, well-understood or conventional. Accordingly, each claim of the '9,474 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art operating vehicle through

programmable control devices are concrete and improve the capabilities of existing methods.

40.    A person of ordinary skill in the art reviewing the specification of the '9,474 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

**The '4,474 Patent**

41.    U.S. Patent No. 11,184,474 (the "'4,474 Patent") entitled "System and method for supporting movable object application development," was issued on November 23, 2021, and names Weifeng Liu, Xiaojun Li, Caihua Zhao, Nanning Li, and Changjian Xu as the inventors. The '4,474 Patent is attached as Exhibit 3.

42.    DJI owns all rights, title, and interest in the '4,474 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

43.    The '4,474 Patent discloses novel techniques for "developing applications for using movable objects." '4,474 Patent at 1:17-21.

44.    The '4,474 Patent is valid and enforceable and directed to patentable subject matter.

45.    Claim 29 of the '4,474 Patent reads as follows:

29. A non-transitory computer-readable medium with instructions stored thereon, that when executed by a processor, cause a user terminal to perform the steps comprising:

receiving, at a user terminal from an authentication server, an application key of an application deployed on the user terminal, wherein the application key is assigned to the application by the authentication server;

generating, at the user terminal, an activation request including a request to control a particular movable object by the user terminal, wherein at least one privilege is required to control the particular movable object, and the activation request includes the application key;

sending, from the user terminal, the activation request to the authentication server, the authentication server being configured to determine whether the at least one privilege should be granted to the user terminal based on the application key;

receiving, from the authentication server and at the user terminal, a response to the activation request, the response comprising a grant of the at least one privilege or a denial of the at least one privilege; and

transmitting, from the user terminal, control signals to the particular movable object to control at least one hardware module of the particular movable object if the received response to the activation request comprises the grant of the at least one privilege,

wherein the particular movable object is an unmanned aircraft, an unmanned vehicle, or a robot.

46. A person of ordinary skill in the art reading the '4,474 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of developing applications for using movable objects, and that the invention provides for advancements in the field that, as of the filing date, were not routine, well-understood or conventional. Accordingly, each claim of the '4,474 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art software application development are concrete and improve the capabilities of existing methods.

47. A person of ordinary skill in the art reviewing the specification of the '4,474 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

**The '121 Patent**

48. U.S. Patent No. 11,482,121 (the "'121 Patent") entitled "Open platform for vehicle restricted region," was issued on October 25, 2022, and names Weifeng Liu, Jian Zhao, Yulong

Deng, and Nanning Li as the inventors. The '121 Patent is attached as Exhibit 4.

49.    DJI owns all rights, title, and interest in the '121 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

50.    The '121 Patent discloses novel techniques for collecting, storing, designating, updating, and displaying restriction regions for movable objects such as vehicles. '121 Patent at 1:31-45, 13:21-26, 40:37-39.

51.    The '121 Patent is valid and enforceable and directed to patentable subject matter.

52.    Claim 1 of the '121 Patent reads as follows:

1. A system for managing a restriction region, the system comprising:

one or more processors configured to:

receive one or more parameters of a designated restriction region for a ground vehicle, the one or more parameters being input by a user via a user interface, wherein the one or more parameters of the designated restriction region include at least a location associated with a private property;

authenticate an identity of the user to determine whether the user is authorized to designate the restriction region;

in response to determining the user is authorized to designate the restriction region, store the one or more parameters of the designated restriction region to a database;

associate one or more response measures with the designated restriction region based on the one or more parameters; and

implement the one or more response measures to affect operation of the ground vehicle along a travel path when the ground vehicle is within or near the designated restriction region, by at least one of (a) forcing the ground vehicle to change direction and move away from the designated restriction region, (b) forcing the ground vehicle to stop, or (c) providing an alert.

53.    A person of ordinary skill in the art reading the '121 Patent and its claims would

understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of implementing restriction regions for movable objects, and that the invention provides for advancements in the field that, as of the filing date, were not routine, well-understood or conventional. Accordingly, each claim of the '121 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art for managing restriction regions lacking flexibility and responsiveness are concrete and improve the capabilities of existing methods.

54.    A person of ordinary skill in the art reviewing the specification of the '121 Patent would understand that the inventors had possession of the claimed subject matter and would know how to practice the claimed invention without undue experimentation.

**Defendants' Infringement**

55.    As detailed below, each element of at least one claim of each of the Asserted Patents is literally present in Defendants' products, infrastructure, and/or services. To the extent that any element is not literally present, each such element is present under the doctrine of equivalents. Plaintiff's analysis below should not be taken as an admission that the preamble for any claim is limiting. While Plaintiff cites publicly available information, Plaintiff may rely on other forms of evidence to show infringement.

56.    Generally, the Accused Instrumentalities for the Asserted Patents include Irdeto's Keystone product. Exemplary, non-limiting Accused Instrumentalities are identified in the

attached claim charts.[19]

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,116,785

57.    Plaintiff incorporates the allegations of all foregoing paragraphs as if fully restated herein.

58.    Defendants have been and are now directly infringing and/or indirectly infringing the '785 Patent by way of inducement, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Instrumentalities, and/or inducing others to do the same. Defendants derive revenue from the activities relating to the Accused Instrumentalities. As explained below, these are covered by one or more claims of the '785 Patent, including but not limited to Claim 35.

59.    Defendants are aware of the '785 Patent and their infringement of the '785 Patent at least as of the filing of this Complaint.

60.    The Accused Instrumentalities meet all the limitations of at least Claim 35 of the '785 Patent. A chart presenting a non-limiting example of Defendants' infringement of Claim 35 of the '785 Patent is attached to this Complaint as Exhibit 5.

61.    On information and belief, Irdeto also actively, knowingly, and intentionally induces infringement of one or more claims of the '785 Patent under 35 U.S.C. § 271(b) by actively

---

[19] The allegations provided are exemplary and without prejudice to DJI's infringement contentions to be provided pursuant to the Federal Rules of Civil Procedure, the Court's scheduling order and/or local rules. DJI's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Federal Rules of Civil Procedure, the Court's scheduling order and/or local rules. Identification of the Accused Instrumentalities, as well as a complete list of the infringed claims, will be provided in DJI's infringement contentions pursuant to the Federal Rules of Civil Procedure, the Court's scheduling order and/or local rules.

encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Instrumentality. For example, Irdeto markets the Keystone system for use in U.S. fleets, including, through among other things, online tutorials that instruct users to perform the claimed limitations. Irdeto knew, or was willfully blind to the fact, that such actions would cause its customers' and partners' infringing use of the Accused Instrumentalities.

62.    Defendants' acts of infringement have caused damage to DJI. DJI is entitled to recover from Defendants the damages sustained by Defendants as a result of their wrongful acts in an amount subject to proof at trial.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,119,474

63.    Plaintiff incorporates the allegations of all foregoing paragraphs as if fully restated herein.

64.    Defendants have been and are now directly infringing and/or indirectly infringing the '9,474 Patent by way of inducement, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Instrumentalities, and/or inducing others to do the same. Defendants derive revenue from the activities relating to the Accused Instrumentalities. As explained below, these are covered by one or more claims of the '9,474 Patent, including but not limited to Claim 19.

65.    Defendants are aware of the '9,474 Patent and their infringement of the '9,474 Patent at least as of the filing of this Complaint.

66.    The Accused Instrumentalities meet all the limitations of at least Claim 19 of the '9,474 Patent. A chart presenting a non-limiting example of Defendants' infringement of Claim 19 of the '9,474 Patent is attached to this Complaint as Exhibit 6.

67. On information and belief, Irdeto also actively, knowingly, and intentionally induces infringement of one or more claims of the '9,474 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Instrumentality. For example, Irdeto markets the Keystone system for use in U.S. fleets, including, through among other things, online tutorials that instruct users to perform the claimed limitations. Irdeto knew, or was willfully blind to the fact, that such actions would cause its customers' and partners' infringing use of the Accused Instrumentalities.

68. Defendants' acts of infringement have caused damage to DJI. DJI is entitled to recover from Defendants the damages sustained by Defendants as a result of their wrongful acts in an amount subject to proof at trial.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,184,474

69. Plaintiff incorporates the allegations of all foregoing paragraphs as if fully restated herein.

70. Defendants have been and are now directly infringing and/or indirectly infringing the '4,474 Patent by way of inducement, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Instrumentalities, and/or inducing others to do the same. Defendants derive revenue from the activities relating to the Accused Instrumentalities. As explained below, these are covered by one or more claims of the '4,474 Patent, including but not limited to Claim 29.

71. Defendants are aware of the '4,474 Patent and their infringement of the '4,474 Patent at least as of the filing of this Complaint.

72. The Accused Instrumentalities meet all the limitations of at least Claim 19 of the

'4,474 Patent. A chart presenting a non-limiting example of Defendants' infringement of Claim 29 of the '4,474 Patent is attached to this Complaint as Exhibit 7.

73.    On information and belief, Irdeto also actively, knowingly, and intentionally induces infringement of one or more claims of the '4,474 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Instrumentality. For example, Irdeto markets the Keystone system for use in U.S. fleets, including, through among other things, online tutorials that instruct users to perform the claimed limitations. Irdeto knew, or was willfully blind to the fact, that such actions would cause its customers' and partners' infringing use of the Accused Instrumentalities.

74.    Defendants' acts of infringement have caused damage to DJI. DJI is entitled to recover from Defendants the damages sustained by Defendants as a result of their wrongful acts in an amount subject to proof at trial.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,482,121

75.    Plaintiff incorporates the allegations of all foregoing paragraphs as if fully restated herein.

76.    Defendants have been and are now directly infringing and/or indirectly infringing the '121 Patent by way of inducement, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, infrastructure, and/or services, including at least the Accused Instrumentalities, and/or inducing others to do the same. Defendants derive revenue from the activities relating to the Accused Instrumentalities. As explained below, these are covered by one or more claims of the '121 Patent, including but not limited to Claim 1.

77.    Defendants are aware of the '121 Patent and their infringement of the '121 Patent

at least as of the filing of this Complaint.

78.    The Accused Instrumentalities meet all the limitations of at least Claim 1 of the '121 Patent. A chart presenting a non-limiting example of Defendants' infringement of Claim 1 of the '121 Patent is attached to this Complaint as Exhibit 8.

79.    On information and belief, Irdeto also actively, knowingly, and intentionally induces infringement of one or more claims of the '121 Patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, sell, offer to sell, and/or import in the United States, the Accused Instrumentality. For example, Irdeto markets the Keystone system for use in U.S. fleets, including, through among other things, online tutorials that instruct users to perform the claimed limitations. Irdeto knew, or was willfully blind to the fact, that such actions would cause its customers' and partners' infringing use of the Accused Instrumentalities.

80.    Defendants' acts of infringement have caused damage to DJI. DJI is entitled to recover from Defendants the damages sustained by Defendants as a result of their wrongful acts in an amount subject to proof at trial.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court for an order granting the following relief:

a.    A judgment in favor of Plaintiff that Defendants have infringed, either literally and/or under the doctrine of equivalents, the '785, '9,474, '4,474, and '121 Patents;

b.    A judgment and order finding that Defendants' infringement has been willful;

c.    A permanent injunction prohibiting Defendants from further acts of

infringement;

d.  A judgment and order requiring Defendants to pay Plaintiffs their damages, costs, expenses, and any enhanced damages to which Plaintiffs are entitled for Defendants' infringement;

e.  A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

f.  A judgment and order finding this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff their reasonable attorneys' fees against Defendants; and

g.  Any and all other relief as the Court may deem appropriate and just under the circumstances.

Dated: October 24, 2025.

/s/ Kevin L. Burgess
Kevin L. Burgess
Texas Bar No. 24006927
kburgess@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
MCKOOL SMITH, P.C.
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Kaylee E. Hoffner
Texas Bar No. 24127036
khoffner@mckoolsmith.com
MCKOOL SMITH, P.C.
600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300

Telecopier: (713) 485-7344

Bradley Jarrett
Texas Bar No. 24128518
bjarrett@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

- and -

Makenna A. Miller
California Bar No. 329244 (*pro hac vice forthcoming*)
mmiller@mckoolsmith.com
MCKOOL SMITH, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200
Telecopier: (213) 694-1234